UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| GABRIEL CANTU JR., § | |
| § | |
| Plaintiff, § | |
| VS. § | CIVIL ACTION NO. 2:13-CV-62 |
| § | |
| CETCO OILFIELD SERVICES § | |
| COMPANY, L.L.C., *et al*, § | |
| § | |
| Defendants. § | |

# ORDER

This action began with a personal injury claim. Now, after the personal injury claims have been settled and dismissed, it is a battle of indemnity claims by and between the remaining parties. Pending before the Court are cross-motions for summary judgment between SandRidge Energy, Inc. (SandRidge) and Nabors Well Services Company and Nabors Well Services, Ltd (jointly Nabors) regarding whether one owes indemnity to the other. D.E. 126 and 127. For the reasons set out below, the Court GRANTS IN PART and DENIES IN PART SandRidge's motion (D.E. 126) and GRANTS IN PART and DENIES IN PART Nabors's motion (D.E. 127).

## JURISDICTION

Gabriel Cantu, Jr. (Cantu) filed his case in this Court alleging state law claims against Defendant CETCO Oilfield Services Company, LLC (CETCO) pursuant to diversity jurisdiction. 28 U.S.C. § 1332(a). D.E. 1. He alleged that he is a resident of Texas and CETCO is a Delaware corporation. D.E. 1. CETCO responded that it is a

Delaware corporation with its principal place of business in Louisiana and admitted that diversity jurisdiction existed.  D.E. 23.

As Cantu added other Defendants, Cantu's allegation of diversity jurisdiction was repeated and the allegation was admitted by each Defendant.  D.E. 64, 75, 77, 89.  According to the record, SandRidge is a Delaware corporation with its principal place of business in Oklahoma; Chalmers, Collins, and Alwell, Inc. (Chalmers) is a Louisiana corporation with its principal place of business in Louisiana; and Charles "Spike" Morgan (Morgan) is a natural person and citizen of Louisiana.[1]  D.E. 64, 70, 77, 126-4, 126-5, 139.  Thus, throughout Cantu's prosecution of this case, this Court had diversity jurisdiction of the primary claims.

The Court permitted the Defendants to designate Nabors as a responsible third party and Chalmers later filed a third party complaint against Nabors.  D.E. 25, 72, 100.  Both Nabors parties are alleged to be Nevada corporations with their principal place of business in Texas.[2]  D.E. 100.  Soon thereafter, Cantu settled and dismissed his claims, leaving for decision the cross-claims and third-party claims for indemnity.  D.E. 107.

Mapping the claims, the only claim that is not now supported by diversity jurisdiction in its own right is that brought by CETCO against SandRidge, because both are Delaware corporations.  That claim, however, was originally filed as part and parcel of the case or controversy involving Cantu, entitling it to supplemental jurisdiction,

---

[1]  Chalmers, Collins, and Alwell, Inc. employed Charles "Spike" Morgan and furnished his services to SandRidge. For purposes of this case, Chalmer and Morgan's interests are identical and the two will be referred to herein jointly as Chalmers.

[2]  Because the workers compensation bar prevented Cantu from making claims against Nabors, the joinder of Nabors as a third-party defendant did not destroy diversity jurisdiction over the primary claims.

which continues despite the dismissal of Cantu's claims.  28 U.S.C. § 1367(a); *Baker v. Farmers Elec. Co-op., Inc.*, 34 F.3d 274, 283 (5th Cir. 1994) (pendent (supplemental) jurisdiction continues after dismissal of the claims upon which jurisdiction was established).  This Court has jurisdiction to determine the remaining claims.

## FACTS

On April 5, 2012, SandRidge was the owner and operator of an oil and gas wellsite near the town of San Leon, Galveston County, Texas.  Pursuant to a Master Service Agreement (Chalmers MSA, D.E. 126-5), SandRidge hired Chalmers's company man services to supervise the wellsite.  Pursuant to a second MSA (Nabors MSA, D.E. 122-1), SandRidge hired Nabors to drill the well.  Nabors employed Cantu.  Through a third MSA (CETCO MSA, D.E. 126-4), SandRidge hired CETCO to perform coiled tubing services on the well, including pressure-testing the well.  Because of an alleged error in setting up the pressure test, an explosion occurred in which Cantu sustained personal injuries, falling from the drilling rig.

Cantu's claims were settled on behalf of all of the parties and were dismissed.  D.E. 107.  Pursuant to the settlement agreement, half of the settlement amount was funded by SandRidge's insurance carrier, AIG, and the other half by Nabors, with SandRidge and Nabors reserving the right to seek indemnity against each other for the settlement amounts and for the remaining claims for defense costs, including such claims asserted by CETCO and Chambers against them.  The parties assert various obligations of contractual indemnity among each other pursuant to the various MSAs.

## DISCUSSION

Nabors, CETCO, and Chalmers were all contractors hired by SandRidge. Each has asserted a complaint against SandRidge, whether for proportionate responsibility, contractual indemnity, or both. D.E. 70 (CETCO), 99 (Chalmers), 123 (Nabors). Chalmers and SandRidge have also pled their own complaints against Nabors for contractual indemnity either directly or, as in Chalmers's case, as third party beneficiaries of the Nabors MSA.[3] D.E. 100 (Chalmers), 122 (SandRidge).

It is undisputed that the indemnity claims between SandRidge and Nabors are governed by the Nabors MSA. And while both parties pled that the Nabors MSA violated the Texas Anti-Indemnity Act (D.E. 124, 125), neither summary judgment motion seeks to defeat the MSA using that defense and the Court deems it waived. Rather, the primary question posed by both summary judgment motions is whether Nabors is required to indemnify SandRidge for the claims of CETCO and Chalmers. Also at issue is whether Nabors owes SandRidge indemnity for its half of the settlement funds and defense costs. Nabors further seeks to turn the tables and obtain indemnity against SandRidge for all of its liability and defense costs. Both seek attorney's fees and costs expended in connection with this indemnity dispute.

---

[3] While Nabors spends some time in its briefing defending against a claim for third-party beneficiary status, that issue is defeated vis-à-vis SandRidge by the indemnity limitation provisions of paragraph 8.26 of the Nabors MSA. The Court declines to comment on whether it would defeat Chalmers's direct claim against Nabors (D.E. 100) because Nabors has not requested summary judgment against Chalmers.

### A. SandRidge is Entitled to Indemnity from Nabors for its Losses Regarding Cantu's Claims Against SandRidge.

Because it is undisputed that Cantu was Nabors' employee, Nabors owed a duty of indemnity to SandRidge pursuant to the Nabors MSA for Cantu's claims against SandRidge for bodily injury. D.E. 122-1, p. 9 (¶ 8.2). Nabors has conceded as much. D.E. 128, p. 1. For those reasons, the Court GRANTS partial summary judgment in favor of SandRidge that Nabors owes it a duty of indemnity for its losses attributable to Cantu's claims against it.

Nabors contends that it honored that duty in settling the case. SandRidge claims that its insurance carrier, AIG, paid half of that settlement "on behalf of SandRidge Energy, Inc.," alluding to a request for full reimbursement from Nabors, a claim Nabors vehemently rejects.[4] D.E. 134, pp. 4-5. SandRidge's motion does not request an award of damages in any sum certain and the duty to indemnify includes expenses of litigation, court costs, and reasonable attorney's fees, indicating that funding of the settlement with payments to Cantu is not the end of the story. See D.E. 122-1, p. 12 (¶ 8.11). This Court is not called upon at this time to quantify the amount owed in satisfaction of Nabors' duty to indemnify SandRidge, if any additional payment is due.

The motion speaks solely to liability, with damages generally referred to as the amount of the settlement plus other claims. Because AIG may have funded part of the settlement "on behalf of SandRidge," which could include its duty to indemnify its

---

[4] Nabors has objected to the evidence related to AIG's settlement payment and the basis on which it was paid. The Court denies the motion to strike, noting that the affidavit proves only that the settlement payment was made. It is not evidence of whether AIG paid "on behalf of SandRidge" for SandRidge's own liability or that of its contractors.

contractors, CETCO and Chalmers, the Court cannot quantify from the record provided that any particular amount remains owing pursuant to Nabors' duty to indemnify SandRidge. The Court reserves the question of what losses were attributable to Cantu's claims against SandRidge and thus subject to indemnity from Nabors for further evidentiary proceedings.

### B. SandRidge is Not Entitled to Indemnity for its Contractors' Losses.

SandRidge claims that it is entitled to summary judgment for indemnity from Nabors for contractual indemnity it owes, in turn, to its contractors, CETCO and Chalmers—"pass-through indemnity." This claim is based on language in the Nabors MSA indemnity provisions whereby Nabors agreed to provide indemnity to SandRidge and its invitees. D.E. 122-1, p. 9 (¶ 8.2). While CETCO and Chalmers can likely qualify as invitees by a showing that they entered the premises with SandRidge's express or implied knowledge and for the parties' mutual benefit, the inquiry does not end there. *Rosas v. Buddies Food Store*, 518 S.W.2d 534, 536 (Tex. 1975) (defining the requirements for invitee status).

Whether invitee status as set out in paragraph 8.2 of the Nabors MSA is sufficient to support an indemnity claim depends upon the meaning and enforceability of paragraph 8.26 of the Nabors MSA. It reads, in part: "the terms and provisions of [indemnity] paragraphs 8.1 through 8.30 shall have no application to claims or causes of action asserted against Company [SandRidge] or Contractor [Nabors] by reason of any

agreement of indemnity with a person or entity not a party to this Agreement."[5]  D.E. 122-1, p. 16.  On its face, the plain language of this provision appears to defeat SandRidge's claims for the Cantu-related losses of CETCO and Chalmers.

SandRidge does not suggest that the provision, itself, is unenforceable.  Instead, it argues that it does not apply because the invitee status of CETCO and Chalmers makes them direct parties to the Nabors MSA or third party beneficiaries of the agreement.  Thus they fall outside the scope of 8.26 because, by its terms, it does not apply to a party to the Nabors MSA.  But CETCO and Chalmers are not parties to the Nabors MSA.  They are not named as parties or listed in the first paragraph of the Nabors MSA wherein the terms "party" and "parties" are defined and they did not sign the agreement.  The Court also notes that the invitee argument that SandRidge makes in trying to transform CETCO and Chalmers into parties appears in paragraph 8.2, one of the paragraphs nullified by paragraph 8.26.  SandRidge has failed to supply any reason to ignore these plain and obvious limitations on how the parties to the contract were defined in the contract itself.

This Court concludes that Nabors does not owe SandRidge pass-through indemnity for the contractual indemnity claims brought against SandRidge by CETCO pursuant to the CETCO MSA and by Chalmers pursuant to the Chalmers MSA.  The Court notes that CETCO made a separate claim against SandRidge for contribution under

---

[5] While the parties provided some briefing regarding rules of contract construction, no such authority provides a rule that would require the Court to refuse to give effect to paragraph 8.26.  And so long as paragraph 8.26 is enforced, it precludes indemnity for claims of contractors despite any of the other language in the indemnity provisions.  Its plain language is clear and does not leave room for rational argument.

the Texas Proportionate Responsibility Act, chapter 33 of the Texas Civil Practice and Remedies Code. D.E. 70, pp. 4-5. This claim was not addressed in the motions or responses of either party and is presumed moot pursuant to Tex. Civ. Prac. & Rem. Code § 33.015(d). If the parties seek any relief with respect to that claim, they are ORDERED to file an appropriate motion within ten (10) days of the date of this Order. In the absence of such a claim, this direct, non-contractual claim against SandRidge for contribution will be dismissed.

### C. Nabors is Not Entitled to Indemnity from SandRidge.

Despite conceding that it owed indemnity to SandRidge for SandRidge's losses as a result of Cantu's lawsuit, Nabors now demands indemnity from SandRidge for all claims, including the settlement of Cantu's action and its defense costs. This demand for indemnity is based on the Nabors MSA's provision entitled, "Inspection of Materials Furnished by Company." D.E. 122-1, p. 14 (¶ 8.20). Nabors claims that SandRidge has judicially admitted that Cantu's injuries were caused by an equipment malfunction for which SandRidge contractually agreed to indemnify Nabors. The provision upon which Nabors relies reads:

> Inspection of Materials Furnished by Company: Contractor agrees to visually inspect all items furnished by Company *before using same* and to notify Company of any apparent defects that it considers material. Contractor shall not be liable for *any loss or damage* resulting from the use of materials furnished by Company, and Company shall release Contractor from, and shall protect, defend and indemnify Contractor from and against, *any such liability*; provided, however, that *should Contractor knowingly use* such materials without notifying Company of any significant

> defect that Contractor knows, or should have known, will ***have a significant adverse affect*** [sic] ***on the outcome of the activities***, Contractor shall be deemed to have assumed risk and liability for ***any damage to Company's property*** resulting therefrom that were caused by its gross negligence that may occur in ***operations conducted hereunder*** by reason of failure or defects in such materials provided that such ***liability of Contractor shall not exceed $100,000***.

*Id*. (emphasis added).

The Court is bound to construe the contract in a manner that gives effect to the parties' intent by examining "***the entire writing*** in an effort to harmonize and give effect to ***all the provisions*** of the contract so that none will be rendered meaningless." *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983) (emphasis in original). Courts apply a presumption that parties to a contract intend every clause to have some effect by reconciling provisions unless they are irreconcilable. *Ogden v. Dickinson State Bank*, 662 S.W.2d 330, 332 (Tex. 1983). In comparing the indemnity provisions of paragraphs 8.2 and 8.20, the Court notes important distinctions relevant to: (a) the parties who may be indemnified and the parties who may suffer injury; (b) the type of conduct and injury anticipated; and (c) consequences for insurance in the overall allocation of liabilities. Thus, the provisions may be reconciled as serving different purposes for different activities, with paragraph 8.20 supplying a very limited exception to paragraph 8.2, as anticipated in its preliminary clause, "Except as otherwise specifically provided to the contrary herein."

**Parties injured and indemnified**.  There is a stark difference in the scope of the parties benefitting from the two provisions.  Paragraph 8.2 is expansive, concerned with the activities and/or losses of officers, directors, employees, invitees, working interest owners, non-operators, and subcontractors.  In paragraph 8.20, only the Company and the Contractor are referenced.  Paragraph 8.20 is silent as to bodily injury claims of individuals.

**Type of injury**.  The concern in paragraph 8.2 is every kind of claim under any legal theory on account of illness, bodily injury, death or damage to property.  In paragraph 8.20, the concern is defective equipment and a safe operations practice of requiring Contractor to inspect the equipment and inform Company of any known defects.  The conduct anticipated is the defined Contractor—Nabors's—use (not a different contractor's use) of defective equipment in the drilling operations.  The risk anticipated is the Company's property and the outcome of drilling activities.  And if Contractor's conduct is particularly egregious, it is responsible for up to only $100,000 in damage—to Company's property.  One would not expect such a limitation on liability if human life and limb were at issue.

**Insurance consequences**.  To treat paragraph 8.20 as Nabors suggests is to create a conflict not only with paragraph 8.2, but with its corresponding paragraph 8.3 in that they are mirror images designed with equivalent obligations to provide insurance for bodily injury, illness, death, or damage to property.  *See* D.E. 122-1, pp. 8 (¶ 7.2), 11 (¶ 8.7(b), 17 (¶ 8.28).  To shift the obligation for an employee's bodily injury from the main indemnity obligation (paragraph 8.2) in which such a risk is expressly acknowledged to a

provision that speaks narrowly about the Contractor's use of equipment (paragraph 8.20) and says nothing about bodily injury or employees is not only counter-intuitive, but places the entire obligation at risk of violating the express negligence and fair notice rules.

The Court agrees with SandRidge's profferred construction of paragraph 8.20 as being limited to property damage associated with drilling operations caused by defective equipment supplied by SandRidge for Nabors's use.  Thus it does not support Nabors's claim for indemnity from SandRidge for liability arising out of Cantu's injury.

### D. Damages, Fees, and Costs

As set out above, because of paragraph 8.26 of the Nabors MSA, SandRidge is not entitled to indemnity from Nabors for the contractual indemnity claims made against it by CETCO and Chalmers.  Likewise, because of the terms of paragraph 8.2 of the Nabors MSA and the inapplicability of the exception represented by paragraph 8.20, Nabors is not entitled to indemnity from SandRidge for Nabors' losses incurred in defending against Cantu's claims and settling them.

Of the claims brought in the cross-motions for summary judgment, SandRidge is entitled to indemnity from Nabors only for losses incurred by SandRidge on its own behalf.  Given that Nabors accepted SandRidge's initial claim for indemnity, defended SandRidge, and paid settlement amounts to Cantu that had the effect of obtaining the dismissal of Cantu's claims against SandRidge, it is not clear that SandRidge has any remaining claim for indemnity against Nabors on its own behalf.  If SandRidge contends that the monies paid by SandRidge's insurance carrier, AIG, were for its own liability

rather than its contractors, then SandRidge did not present that claim in its motion and must do so in due course for validation and liquidation.

While both SandRidge and Nabors made claims for attorney's fees and costs incurred in this summary judgment proceeding to enforce indemnity obligations, their status as prevailing parties are offsetting. The Court DENIES the respective requests for attorney's fees and costs.

## CONCLUSION

For the reasons set out above, the Court GRANTS IN PART and DENIES IN PART SandRidge's motion (D.E. 126). The Court GRANTS SandRidge's motion insofar as SandRidge is entitled to judgment against Nabors that Nabors must indemnity SandRidge for losses incurred by SandRidge on its own behalf, if any, for the defense of Cantu's claims. The Court DENIES SandRidge's motion insofar as it seeks judgment that it is entitled to indemnity from Nabors for the contractual indemnity claims CETCO and Chalmers brought against SandRidge.

The Court further GRANTS IN PART and DENIES IN PART Nabors's motion (D.E. 127). The Court GRANTS Nabors's motion that judgment be rendered in its favor that SandRidge take nothing on its claim for indemnity for CETCO and Chalmers' contractual indemnity claims made against SandRidge. The Court DENIES Nabors's motion insofar as it seeks judgment that it is entitled to indemnity from SandRidge pursuant to paragraph 8.20 of the Nabors MSA.

Because the parties' respective victories are offsetting, the Court DENIES both motions' request for attorney's fees and costs because neither fully prevailed against the other.

ORDERED this 4th day of November, 2015.

_____
NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE